**CONSOLIDATION COAL COMPANY and State of North Dakota, Petitioners,**

v.

**Vivian E. SMITH and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 82–1424.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1983.

Decided Feb. 16, 1983.

T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Asst. Counsel for Black Lung Benefits, Melissa Page Marshall, Atty., U.S.

Dept. of Labor, Washington, D.C., for the Director, Office of Workers' Compensation Programs.

Edward J. Scheunemann, Denver, Colo., for Vivian E. Smith.

David Allen Barnette, Jackson, Kelly, Holt & O'Farrell, Charleston, W.V., for Consolidation Coal Co.

Before HEANEY and McMILLIAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

HEANEY, Circuit Judge.

Consolidation Coal Company and the State of North Dakota petition this Court to set aside the decision of the United States Department of Labor Benefits Review Board [BRB][1] which awarded survivor's benefits to Vivian E. Smith under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901–945 (1976 & Supp. V 1981).[2] Because the BRB erred in finding that Mrs. Smith was entitled to these benefits as a matter of law, we reverse and remand with directions that the BRB remand to the administrative law judge [ALJ] for more explicit factual findings and a proper application of the law.

Henry Smith died on November 3, 1977, after an extended career as a "tipple operator" for Consolidation Coal. His job brought him in daily contact with coal dust. After his death, his wife, Vivian, filed a claim for survivor's benefits under the Black Lung Benefits Act. The Office of Workers' Compensation Programs [OWCP] made an initial finding of entitlement and notified Consolidation Coal of its potential liability on the claim.[3] Consolidation Coal contested its liability and requested a hearing.

At that hearing, the ALJ considered several medical reports concerning Mr. Smith's condition at the time of his death, based both on examinations while he was alive and autopsy records compiled immediately after he died. The medical reports clearly established that Mr. Smith died of heart failure following an acute myocardial infarction. Two pathologists, Dr. Echols A. Hansbarger and Dr. Grover B. Swoyer, reviewed the autopsy records of Mr. Smith. Dr. Hansbarger concluded in his report that Mr. Smith did not suffer from coal workers' pneumoconiosis ("black lung" disease) at the time of his death. Dr. Swoyer's report indicated general agreement with Dr. Hansbarger but stated that a sectional slide of Mr. Smith's lung revealed "a minimal degree of anthracosis." Dr. Swoyer noted that, because his review was based on only one section of the lung, it might be an inadequate analysis of Mr. Smith's condition at the time of his death.

The ALJ found that Mr. Smith worked as a coal miner for twenty-five years and three months from June 29, 1946, until his death on November 3, 1977. Although the medical reports disclaimed the presence of any "coal workers' pneumoconiosis" at the time of Mr. Smith's death, the ALJ stated that Dr. Swoyer's finding of minimal anthracosis apparently fulfilled the legal definition of pneumoconiosis in federal regulations. *See* 20 C.F.R. § 727.202 (1982).[4] A

---

1. The Decision and Order of the Benefits Review Board [BRB] is styled *Vivian E. Smith v. Consolidation Coal Co.* and *Director, Office of Workers' Compensation Programs, United States Department of Labor,* No. 80–635 BLA (March 29, 1982).

2. The administrative law judge [ALJ] rendered an initial decision on April 8, 1980, Case No. 80–BLA–461, and denied a motion for reconsideration of that decision on June 5, 1980, *id.*

3. Coal operators may be responsible for benefit payments to miners and other beneficiaries in various situations by statute and regulation. *See* 30 U.S.C. §§ 932–933 (1976 & Supp. V 1981); 20 C.F.R. §§ 725.490–725.495 (1982).

4. The applicable regulations define pneumoconiosis for the purposes of the Federal Coal Mine Health and Safety Act, as amended by the Black Lung Benefits Act, 30 U.S.C. §§ 801–960 (1976 & Supp. V 1981), to include "coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosis * * * arising out of coal mine employment." 20 C.F.R. § 727.202 (1982). The parties apparently agree that the reference to "anthracosisanthro-silicosis" is a typographical error which should read "anthracosis, anthrosilicosis." *See* 20 C.F.R. § 718.201 (1982) (definition of pneumoconiosis in final

finding of pneumoconiosis from autopsy records triggers the "interim presumption," found in 20 C.F.R. § 727.203 (1982), that the miner was "totally disabled due to pneumoconiosis at the time of death * * * arising out of [his coal mine] employment." *Id.* § 727.203(a). This interim presumption would entitle Mrs. Smith to survivor's benefits, *see* 20 C.F.R. §§ 725.212 & 727.201 (1982), unless the presumption was rebutted as provided in regulations promulgated by the Secretary of Labor, 20 C.F.R. § 727.-203(b) (1982).

The ALJ decided, however, that Mr. Smith could not have been totally disabled from pneumoconiosis at the time of his death, because he "worked his usual mine job up to two days prior to his myocardial infarction," he had a history of heavy smoking, he was sixty-seven years of age at the time of his death, and he had a prior heart attack in 1975. The ALJ concluded that Mr. Smith did not die from pneumoconiosis and that he was not totally disabled from that disease at the time of his death, and therefore denied survivor's benefits to Mrs. Smith.

The OWCP filed a motion for reconsideration, arguing that the ALJ denied benefits to Mrs. Smith based solely on Mr. Smith's continued employment up to the time of his death, which could not be "conclusive evidence that the miner was not totally disabled" under federal law. 30 U.S.C. § 902(f)(1)(B)(i) (Supp. II 1978). *See also* 20 C.F.R. § 727.205(a) (1982). The ALJ denied this motion, stating that, in addition to Mr. Smith's continued employment, there was no evidence that his employment record during the last years of his life evinced sporadic work, poor performance, or marginal earnings. The ALJ disregarded the testimony of two of Mr. Smith's co-workers that in the later years of his life he could not do many of the tasks normally required of a person in his position, because of breathing difficulties, since the evidence

failed to link his reduced performance to his alleged pneumoconiosis.

Mrs. Smith and the OWCP appealed the ALJ's decision to the BRB, alleging that the ALJ improperly declined to apply the twenty-five-year presumption for coal mine work prior to June 30, 1971, found in 30 U.S.C. § 921(c)(5) (Supp. V 1981); and that the ALJ erred in finding evidence sufficient to rebut the interim presumption in 20 C.F.R. § 727.203(a) (1982).

In its decision, the BRB recognized that its scope of review was limited by statute to determining whether the decision of the ALJ was in accordance with the law and whether the ALJ's findings of fact were supported by substantial evidence. *See* 30 U.S.C. § 932(a) (Supp. V 1981) (incorporating provisions of Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(b)(3) (1976). The BRB found the ALJ's decision was in essence based on two theories: (1) a finding of no "total disability" in spite of the interim presumption of total disability, or (2) a finding that, even if Mr. Smith was totally disabled, his disability was attributable to factors other than his coal mine employment, *see* 20 C.F.R. § 727.-203(b)(3) (1982). Consolidation Coal also argued before the BRB that Mr. Smith did not have pneumoconiosis, another possible basis for rebutting the interim presumption under 20 C.F.R. § 727.203(b)(4) (1982). The BRB rejected each of these arguments. It held that, as a matter of law, the record could only support a finding that Mr. Smith's performance on the job suffered as a result of breathing difficulties brought on by his coal mine employment. No medical evidence definitively linking those difficulties to other factors appeared on the record, and, since evidence of continued employment until the time of death cannot be conclusive evidence of a lack of total disability, the BRB reversed the ALJ and remanded for an award of benefits to Mrs. Smith.[5]

regulations for claims filed after effective date of Part 718 of the regulations, March 31, 1981, with corrected language of "anthracosis, anthrosilicosis").

5. Because of its decision to reverse on the interim presumption issue, the BRB found it unnecessary to address the issue of the statutory twenty-five-year presumption.

In so doing, we find that the BRB exceeded the scope of its authority. The BRB is statutorily limited to reviewing the record for substantial evidence and legal correctness. *See Parker v. Director, Office of Workers' Compensation Programs,* 590 F.2d 748, 749 (8th Cir.1979). The crux of the BRB's action in this case was its finding that, as a matter of law, the record could only support the conclusion that Mr. Smith's performance difficulties were the result of his coal mine disease. This finding rests upon the presumption of total disability due to pneumoconiosis arising out of coal mine employment provided in 20 C.F.R. § 727.203(a)(1) (1982), and the trigger for this presumption in the instant case was the discovery of the disease "anthracosis" in Mr. Smith's autopsy reports. Only one of the medical reports following the autopsy found such a disease, however, and the ALJ stated only that this fact "would appear to entitle the Claimant to the application of the presumption."

The ALJ failed to explicitly find that this report established the existence of anthracosis in light of the other medical evidence offered at the hearing. Under such circumstances, we cannot agree that Mrs. Smith is entitled to benefits as a matter of law. The ALJ is in the best position to decide matters of credibility, including the weight to be given to Dr. Swoyer's report of "minimal anthracosis." To reach its conclusion, the BRB in effect had to make its own determination of the existence of anthracosis before examining the sufficiency of the evidence to rebut the interim presumption. Even though the BRB's action might have been the result of the lack of clarity in the decision of the ALJ, federal statute prohibits such action. "[T]he BRB does not have the authority to undertake a *de novo* review of the evidence * * * or to substitute its views for the administrative law judge." *Parker v. Director, Office of Workers' Compensation Programs, supra,* 590 F.2d at 749 (citations omitted). *See also Clites v. Jones and Laughlin Steel Corp.,* 663 F.2d 14, 16 (3d Cir.1981) (reinstating ALJ's award when BRB independently made factual finding on the equivalence of autopsy records and x-rays taken prior to death).

We find that the proper course of BRB action in this situation would be a remand to the ALJ for more definite findings concerning the presence of anthracosis, which would trigger the interim presumption under 20 C.F.R. § 727.203(a) (1982), and, if necessary, a proper application of 20 C.F.R. § 727.203(b) (1982) to determine if the employer rebutted that presumption. The ALJ should classify any rebuttal evidence under a specific subsection of section 727.203(b).[6] We emphasize that the employer has the burden to rebut the presumption if it is triggered. *See Rose v. Clinchfield Coal Co.,* 614 F.2d 936, 939 (4th Cir.1980). Moreover, evidence of continued mine employment up to the time of death is legally insufficient to rebut the interim presumption, 30 U.S.C. § 902(f)(1)(B)(i) (Supp. II 1978), and 20 C.F.R. § 727.205(a) (1982): the ALJ cannot rely on the fact that Mr. Smith worked regularly up to two days prior to his myocardial infarction as the sole support for a finding that he was "doing his usual coal mine work" and thus was not totally disabled, 20 C.F.R. § 727.203(b)(1) (1982). The employer has the burden of showing that Mr. Smith's work was in fact "usual," especially in light of the evidence adduced by Mrs. Smith that Mr. Smith's co-workers "carried him" on the job during the last years of his life.

---

**6.** 20 C.F.R. § 727.203(b) (1982) provides:

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

Accordingly, we set aside the decision of the BRB and remand to it with directions to remand to the ALJ for more explicit factual findings and a proper application of 20 C.F.R. § 727.203 (1982) to the facts of this case. We regret this delay in the final determination of Mrs. Smith's eligibility for survivor's benefits, and direct both the BRB and the ALJ to act promptly in properly reaching that determination.