**NOT RECOMMENDED FOR PUBLICATION**
File Name:  06a0862n.06
Filed:  November 27, 2006

**No. 05-3133**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **KATHLEEN GLADYS CLONCH,** | **)** | |
| widow of ROBERT CLONCH, | **)** | |
| | **)** | **ON PETITION FOR REVIEW OF A** |
| **PETITIONER,** | **)** | **DECISION OF THE BENEFITS** |
| | **)** | **REVIEW BOARD OF THE U.S.** |
| **v.** | **)** | **DEPARTMENT OF LABOR** |
| | **)** | |
| **SOUTHERN OHIO COAL CO.,** | **)** | **OPINION** |
| **DIRECTOR, OFFICE OF WORKERS'** | **)** | |
| **COMPENSATION PROGRAMS, U.S.** | **)** | |
| **DEPARTMENT OF LABOR, AND** | **)** | |
| **BENEFITS REVIEW BOARD,** | **)** | |
| | **)** | |
| **RESPONDENTS.** | **)** | |
| | **)** | |

**Before: KENNEDY and GIBBONS, Circuit Judges; and DONALD, District Judge.**[*]

**BERNICE BOUIE DONALD, District Judge.**  Kathleen Clonch ("Mrs. Clonch"),

widow of deceased claimant Robert Clonch ("Mr. Clonch"), appeals the decision of the Benefits

Review Board of the U.S. Department of Labor ("the BRB") affirming the denial of Mr.

Clonch's request for living miner's black lung benefits. Mrs. Clonch also appeals the decision of

the BRB affirming the denial of her request for survivor's black lung benefits.  For the reasons

stated herein, we **REVERSE** the BRB's decision regarding Mr. Clonch's living miner's black

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee,
sitting by designation.

lung benefits status and **REMAND** to the administrative law judge for reconsideration, and

**AFFIRM** the BRB's decision regarding Mrs. Clonch's survivor's black lung benefits.

## I. BACKGROUND

Mr. Clonch was born on October 31, 1925. He was employed as a coal miner for thirty-two years. He worked at Southern Ohio Coal Co. ("Southern Ohio Coal") for approximately fourteen years, from April 1975 until sometime in 1989. Mr. and Mrs. Clonch were married on August 2, 1948. Mr. Clonch is now deceased.

During Mr. Clonch's lifetime, he filed three living miner applications for federal black lung benefits. Mr. Clonch's first claim was filed on August 7, 1981. His second claim was filed on July 12, 1989. Both of these claims were denied. The current case involves Mr. Clonch's third and final claim, which was initially filed on January 25, 1994. An order denying Mr. Clonch's third claim was entered by Administrative Law Judge Donald W. Mosser ("ALJ Mosser") on October 22, 1999. In this order, ALJ Mosser found that although Mr. Clonch had established the existence of pneumoconiosis, he had failed to establish that he was "totally disabled" as required for an award of benefits. Mr. Clonch initially appealed the decision of ALJ Mosser to the BRB but voluntarily withdrew his appeal on May 22, 2000.

On November 10, 2000, Mr. Clonch submitted new medical evidence to the District Director of the U.S. Department of Labor ("District Director"). The submission was considered a request for modification of ALJ Mosser's findings. The District Director issued a Proposed Decision and Order Denying Benefits on November 13, 2002 and transferred the claim to the Office of Administrative Law Judges for hearing. While the living miner request for

2

modification was pending before the District Director, Mr. Clonch died. Mr. Clonch's death certificate lists the causes of death as cardiac arrest and atherosclerotic cardiac disease. On August 27, 2001, Mrs. Clonch filed a survivor's claim for benefits.

On July 16, 2003, Administrative Law Judge Joseph E. Kane ("ALJ Kane") held a hearing on both Mr. Clonch's living miner benefits claim and Mrs. Clonch's survivor's benefits claim. ALJ Kane issued an order denying both claims. In the order, ALJ Kane rejected additional medical evidence presented by both sides in the dispute, including that of Dr. Glen Baker and Dr. Robert H. Holly, two of Clonch's examining physicians. The ALJ's rulings were appealed to the BRB. The BRB affirmed both of ALJ Kane's rulings in an order issued on December 21, 2004. Mrs. Clonch has appealed the decisions of the BRB to this Court. She raises two issues on appeal: 1) whether ALJ Kane's decision to reject the medical opinions of Dr. Baker and Dr. Holly was supported by substantial evidence; and 2) whether the decision of ALJ Kane to reject Mrs. Clonch's survivor's benefits claim was supported by substantial evidence.

## II. STANDARD OF REVIEW

The Benefits Review Board may set aside an administrative law judge's findings of fact and conclusions of law only if they are unsupported by substantial evidence or not otherwise in accordance with the law. Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir. 1986); see also 33 U.S.C. § 921(b)(3) (providing that the ALJ's findings of fact shall be "conclusive if supported by substantial evidence in the record considered as a whole"). Upon an appeal of the BRB's judgment, this Court's scope of review is limited to scrutinizing the judgment of the BRB for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Welch, 808 F.2d at 445; see also Director,

OWCP v. Quarto Min. Co., 901 F.2d 532, 536 (6th 1990).

Where, as in the present case, the BRB has affirmed the decision of the ALJ on grounds that it was supported by substantial evidence, this Court's role is to determine whether the ALJ's findings and conclusions are, in fact, supported by substantial evidence. If they are, the BRB's decision must be upheld. Zimmerman v. Director, OWCP, 871 F.2d 564, 566 (6th Cir. 1989). As this Court has stated, "What this means, in effect, is that the standards of review for the Benefits Review Board and this Court are the same." Welch, 808 F.2d at 445. For this reason, although it is the BRB's judgments that are before the Court on appeal, the analysis that follows discusses the ALJ's deliberations directly, rather than those of the BRB.

An ALJ's findings are supported by substantial evidence if they are in accord with the applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir. 1985). Furthermore, "substantial evidence is more than a mere scintilla; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ramey v. Kentland Elkhorn Coal Corp., 755 F. 2d 485, 488 (6th Cir. 1985) (internal citations and quotations omitted). To determine whether the substantial evidence standard is satisfied, the Court considers whether the ALJ adequately explained his or her reasoning for crediting certain testimony and evidence over other evidence in the record in deciding to award or deny benefits. Director, OWCP v. Congleton, 743 F. 2d 428, 430 (6th Cir. 1984).

## III. ANALYSIS

### A. Living Miner's Benefits Claim

Mrs. Clonch argues that ALJ Kane improperly rejected the medical opinions of Dr. Baker and Dr. Holly. Clonch contends that ALJ Kane substituted his own opinion of objective medical

evidence for that of Mr. Clonch's examining physicians. Thus, Clonch asserts that ALJ Kane's finding that the physician's reports do not establish the existence of total disability is not supported by substantial evidence.

Coal workers' pneumoconiosis (black lung disease) is an illness which causes severe and chronic respiratory impairment in many coal miners. Congress provided benefits to victims of the disease with the enactment of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901. Implementing regulations for the statute are provided in 20 C.F.R. § 718.1 *et seq*. Under the regulations, a claimant is entitled to benefits if he can show that (1) he has pneumoconiosis, (2) his pneumoconiosis arose out of his coal mining employment, and (3) that he is totally disabled as a result. 20 C.F.R. §§ 718.202, 718.203, 718.204; see also Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir. 1989). The claimant bears the burden of proving each of these elements by a preponderance of the evidence, except where he is aided by a presumption**.** Adams, 886 F.2d at 820.

In reviewing Clonch's case, ALJ Kane found that Clonch had established the existence of pneumoconiosis and that his condition arose out of his coal mining employment. Clonch v. S. Ohio Coal Co., Decision and Order Den. Benefits at 4 (Dec. 22, 2003) [hereinafter Kane Order Denying Benefits]. Therefore, ALJ Kane concluded, the only issue in the case was whether Clonch was "totally disabled."

A claimant is totally disabled "when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f)(1)(A)(2000). A claimant may demonstrate total disability

5

through any one of four methods: (1) a qualifying[1] pulmonary function test; (2) a qualifying

arterial blood-gas test; (3) a diagnosis of cor pulmonale with right-sided congestive heart failure;

or (4) the opinion of a qualified physician. 20 C.F.R. § 718.204(b)(2). The fourth method –

through physician opinion – is described in the regulation as follows:

> Where total disability cannot be shown under [the other three
> methods through qualifying medical tests], total disability may
> nevertheless be found if a physician exercising reasoned medical
> judgment, based on medically acceptable clinical and laboratory
> diagnostic techniques, concludes that a miner's respiratory or
> pulmonary condition prevents or prevented the miner from
> [performing his or her usual coal mine work and engaging in
> gainful employment with some regularity over a substantial period
> of time].

20 C.F.R. § 718.204(b)(2)(iv).

In his request for modification, Mr. Clonch sought to establish that he was totally

disabled through the medical opinions of Glen Baker, M.D. and Robert M. Holly, M.D. In

opposition, Southern Ohio Coal submitted the consultative report of Eric R. Pacht, M.D., who

found that Clonch was not totally disabled. ALJ Kane ultimately discredited the opinions of all

three doctors.

ALJ Kane rejected the medical opinion of Dr. Pacht as equivocal and based upon

inadequate data. As to Dr. Baker's findings, ALJ Kane stated,

> Glen Baker, M.D., a B-reader and Board-certified Pulmonologist,
> examined the Miner on December 13, 2000 at which time he
> reviewed the Miner's symptoms and his occupational (thirty-two
> years in the coal mines, last worked in 1989), medical (difficulty
> breathing, attacks of wheezing, dyspnea, orthopnea, chest pain,
> paroxysmal nocturnal dyspnea) and performed a physical

---

[1] Medical tests are considered "qualifying" when certain procedures enumerated in the regulations are followed and when the results are within the guidelines set forth in 20 C.F.R. § 718, Appendix B.

6

examination (coarse wheezing), pulmonary function study (moderate restrictive defect), arterial blood gas study (mild resting arterial hypoxemia), and interpreted an x-ray (coal worker's pneumoconiosis, 1/0). Dr. Baker diagnosed: (1) coal workers' pneumoconiosis, category 1/0, based on the abnormal chest x-ray and significant duration of exposure to the coal mines; (2) mild resting arterial hypoxemia, based on the arterial blood gas analysis; and (3) moderate restrictive defect, based on the pulmonary function test. In Dr. Baker's opinion, Mr. Clonch did not retain the respiratory capacity to perform coal mine or comparable work where his pulmonary function study, $FVC/FEV_1$, was less than 60%.

Kane Order Denying Benefits at 5. In spite of Dr. Baker's expertise as a Board-certified

Pulmononologist, ALJ Kane rejected Dr. Baker's findings as poorly reasoned. ALJ Kane stated,

[T]he reasoning of Dr. Baker's opinion demonstrates several analytical deficiencies. Primarily, the basis for the "moderate severity of impairment" is unsupported by the evidence. The pulmonary function study relied on is non-qualifying and thus, the "moderate impairment" rating is unfounded. Additionally, the arterial blood gas studies suggest only a mild hypoxemia and the chest x-ray showing simple pneumoconiosis (1/0). Neither of which is indicative of a totally disabling impairment.

Id. at 8.

Finally, ALJ Kane rejected Dr. Holly's opinion stating:

The doctor's finding of "total disability" appears to rely almost completely on a physical examination with the attendant observations. The only objective data relied on, the chest x-rays, evidenced "mild pneumoconiosis" and pleural thickening. The opinion lacks indications of pulmonary function studies or arterial blood gas test. In addition, the doctor does not differentiate between Mr. Clonch's significant cardiac ailments from any pulmonary impairments in reaching the total and permanent disability conclusion.

Id. at 9.

The Court finds ALJ Kane's rejection of Dr. Holly's testimony to be well-founded. A

claimant must demonstrate a causal connection between the pneumoconiosis and the total disability, and by failing to differentiate between the cardiac and pulmonary ailments, Dr. Holly failed to meet this burden.

However, the Court finds ALJ Kane's rejection of Dr. Baker's opinion problematic, in light of the governing regulation and the Sixth Circuit's holding that the Federal Coal Mine Health and Safety Act is remedial in nature and "'must be liberally construed to include the largest number of miners as benefit recipients.'" Tussy v. Island Creek Coal Co., 982 F.2d 1036, 1042 (6th Cir. 1993) (quoting Southard v. Director, OWCP, 732 F.2d 66, 71 (6th Cir. 1984).

The qualified physician opinion provision, 20 CFR § 204(b)(2)(iv), is only applicable where, *inter alia*, total disability *cannot* be shown through a qualifying pulmonary function test. Paragraph (b)(2)(iv) allows a physician's opinion to override the strict numerical criteria set forth in paragraphs (b)(2)(i) - (iii), so long as that opinion is based upon "reasoned medical judgment" which, in turn, is "based on medically acceptable clinical and laboratory diagnostic techniques."

Yet, in reviewing Dr. Baker's opinion, the ALJ arrived at this conclusion: "The basis for the 'moderate severity of impairment' is unsupported by the evidence. *The pulmonary function study relied on is non-qualifying* and thus, the 'moderate impairment' rating is unfounded." Kane Order Denying Benefits at 8 (emphasis added). The ALJ's rejection of Dr. Baker's opinion on grounds that it is based on a non-qualifying pulmonary function study is directly at odds with paragraph (b)(2)(iv)'s terms and its clear purpose, i.e., to provide a more flexible approach than is otherwise allowed under paragraphs (b)(2)(i) - (iii). The ALJ effectively imposed the requirements of paragraph (b)(2)(i) on paragraph (b)(2)(iv), which was intended as a fourth means for establishing total disability, independent of the other three.

8

As the finder-of-fact, it is the role of the ALJ to weigh the evidence and determine whether the opinions of medical experts are well-reasoned. The ALJ may find a physician's opinion unreasonable, for instance, when the opinion does not indicate what factors were relied on, when it does not discuss the claimant's physical condition, when the doctor fails to explain the conclusion reached, or where there are inconsistencies in the doctor's testimony. See Brazzalle v. Director, OWCP, 803 F.2d 934, 936 (8th Cir. 1986); Phillips v. Director, OWCP, 768 F.2d 982, 984 (8th Cir. 1985); Parsons v. Director, OWCP, 6 BLR 1-272, 1-276 (B.R.B.1983); Duke v. Director, OWCP, 6 BLR 1-673 (B.R.B.1983). In addition, if the physician's testimony is not based on "medically acceptable clinical and laboratory diagnostic techniques," the ALJ would have valid grounds for rejecting such testimony. 20 C.F.R. § 718.204(b)(2)(iv). However, the ALJ does not have discretion to reject a medical expert's opinion simply because he disagrees with the physician's interpretation of the claimant's medical evidence. Kertesz v. Crescent Hills Coal Co., 788 F.2d 158 (3rd Cir. 1986); Marcum v. Director, OWCP, 11 BLR 1-23 (B.R.B.1987); Hucker v. Consolidation Coal Co., 9 BLR 1-137 (B.R.B.1986); Fuller v. Gibraltar Coal Corp., 6 BLR 1-1291 (B.R.B.1984).

While ALJ Kane asserts that his rejection of Dr. Baker's opinion was based on defective reasoning, or "analytical deficiencies," the defects noted by ALJ Kane do not fall within any of the accepted bases – improper procedure, documentation, or credentials, etc. – for finding a physician's opinion unreasonable. His findings as to Dr. Baker's opinion instead focus on the inadequacy of each of Dr. Baker's findings standing alone – pulmonary function test, arterial gas study, chest x-ray – to establish total disability. As such, ALJ Kane's findings are contrary to the regulation governing claims of total disability based upon a physician's opinion, 20 C.F.R.

9

718.204(b)(2)(iv), and cannot be sustained by this Court. See Cornett v. Benham Coal, Inc., 227 F.3d 569, 577 (6th Cir. 2000) (finding doctor was entitled to base a reasonable opinion on non-qualifying results); Jonida Trucking, Inc. v. Hunt, 124 F.3d 739, 744 (6th Cir. 1997) ("pulmonary tests exhibiting levels of impairment below that required to establish total disability under section 718.240(c)(1) . . . can form a basis, along with other evidence, for a reasoned medical decision establishing total disability under section 718.240(c)(4))").

The Court's view of the present case and the applicable precedent differs from that of the dissent in a number of respects. First, it is not apparent to the Court that Dr. Baker based his conclusion "solely on the results of non-qualifying pulmonary function tests." According to the record, Dr. Baker reviewed Mr. Conch's symptoms and his occupational and medical history. Kane Order Denying Benefits at 5. He performed a physical examination, a pulmonary function study and an arterial blood gas study. Id. He also examined and interpreted an x-ray. Id. He noted that Mr. Conch suffered from difficulty breathing, attacks of wheezing, dyspnea, orthopnea, chest pain, paroxysmal nocturnal dyspnea, coarse wheezing, moderate restrictive defect, mild resting arterial hypoxemia, and coal worker's pneumoconiosis, 1/0. Id. From these findings, Dr. Baker concluded that "Mr. Clonch did not retain the respiratory capacity to perform coal mine or comparable work where his pulmonary function study, FVC/FEV$_1$, was less than 60%." Id.

In the dissent's view, this case is distinguishable from Cornett because, *inter alia*, in Cornett the doctors based their opinions on clinical data regarding the miner's respiratory condition in addition to a non-qualifying pulmonary function test. Five doctors agreed that the miner suffered from mild to moderate respiratory impairment. Id. Nonetheless, two of the doctors (including Dr. Glen Baker) determined the miner to be totally disabled. Id. Their conclusions

10

were based on x-rays, an examination of the miner, his history in the mines, his history as a smoker, and pulmonary functions studies. Id.

A side-by-side comparison of the factors considered by the doctors in Cornett and the present case reveal a remarkable similarity. It may well be that the doctors in Cornett did a better job of explaining their conclusions than did Dr. Baker in his evaluation of Mr. Clonch, but the variety of factors which informed the respective conclusions appears quite comparable.

Finally, and perhaps most importantly, the dissent disregards Cornett's unqualified and unequivocal statement that "[u]nder the regulations, [a doctor is] entitled to base a reasonable opinion on non-qualifying test results, . . . and the ALJ erred by rejecting [the doctor's] opinion for this reason." Cornett, 227 F.3d at 577. The ALJ in the present case committed an identical error. To affirm the ALJ's decision would be to ratify this error in direct contradiction of the principle articulated by this Court in Cornett. Because ALJ Kane erred in the standards by which he evaluated Dr. Baker's opinion, we hereby **REVERSE** and **REMAND** for further consideration of the evidence in accord with this opinion.

### B. Survivor's Benefits Claim

Mrs. Clonch also asserts that ALJ Kane improperly rejected her survivor's benefit claim. To receive survivor's benefits, a claimant must show that (1) the miner had pneumoconiosis, (2) the miner's pneumoconiosis arose out of coal mine employment, and (3) the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a). ALJ Kane relied on Mr. Clonch's death certificate, stating that he died of cardiac arrest, to reject Mrs. Clonch's survivor's benefit claim. The Petitioners have presented no evidence to show that pneumoconiosis contributed to Clonch's

11

death.  Therefore, ALJ Kane's decision to deny survivor's benefits is supported by the only evidence on Clonch's cause of death.  Accordingly, the decision of the BRB affirming ALJ Kane's decision regarding survivor's benefits is hereby **AFFIRMED**.

## IV.  CONCLUSION

For the reasons set forth herein, we **REVERSE** and **REMAND** the case for reconsideration of Mr. Clonch's living miner's benefits and **AFFIRM** the decision of the BRB affirming the denial of Mrs. Clonch's survivor's benefits.

Kennedy, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's holding that the Administrative Law Judge ("ALJ") did not err in rejecting the opinion of Dr. Holly or in denying the claim of the widow, Kathleen Clonch. I respectfully dissent, however, from the portion of its opinion that reverses the denial of Mr. Clonch's living miner's claim based on the opinion of Dr. Baker.

The ALJ rejected the opinion of Dr. Baker because his medical opinion failed to explain how Clonch's respiratory condition prevented the miner from performing his usual coal mining work and engaging in gainful employment with some regularity.

Our precedent allows miners to qualify for benefits if they are totally disabled due to multiple ailments; but, one of the reasons they are found to be totally disabled must be related to a respiratory condition. Our precedent does not eliminate the need for the miner to prove that he was totally disabled due to that respiratory or pulmonary ailment. Our precedent allows miners to qualify for benefits if they are totally disabled due to multiple ailments but still requires that one of the causes of total disability must be due to a respiratory condition. Thus, our precedent does not eliminate the need for the miner to prove that he was totally disabled due to a respiratory or pulmonary ailment. Under our precedent, Dr. Baker's failure to attribute the miner's total disability to his respiratory condition, the petitioner's sole basis for reopening the prior denial of benefits, is insufficient and the ALJ's denial of the motion to reopen is based on substantial evidence.

With respect to Dr. Baker's opinion, the ALJ found Dr. Baker's report insufficient to reopen the miner's claim because the doctor's opinion that the miner's total disability was due to respiratory impairments was not based on objective data. The ALJ indicated that Dr. Baker failed to explain

13

the basis of his conclusion that the miner was totally disabled due to pneumoconiosis when the only evidence referred to consisted of a non-qualifying pulmonary function test, the miner's chronic bronchitis, and mild pneumoconiosis. The ALJ found that this evidence did not support Dr. Baker's opinion that the claimant would be totally disabled due to his respiratory ailment. The Board affirmed this finding as being supported by substantial evidence.

I agree with the ALJ and the Board. The regulations require not only that the claimant has pneumoconiosis but that he be totally disabled. 20 C.F.R. §§ 718.202-204. Although Dr. Baker concludes that the claimant suffers from a moderate impairment, he does not answer the last question on the form he filed, other than with the notation "VC/FEV$_1$ <60%." J.A. at 157. As the ALJ and the Board found, this pulmonary function test result is non-qualifying. Thus, it must be said that the only evidence he offers to support his medical opinion is a non-qualifying pulmonary function test.[2]

The majority's opinion argues that a medical opinion can be based on non-qualifying pulmonary function tests, relying on this court's decision in *Cornett v. Benham Coal, Inc.*, 227 F.3d 569 (6th Cir. 2000). In that decision, the court held that rejecting a doctor's opinion that relied, in part, on a non-qualifying pulmonary function test was "clearly an inappropriate reason to reject a physician's opinion because" the regulations provided that doctors could "make [] reasoned medical judgment[s] that a miner is totally disabled even 'where pulmonary function tests and/or blood-gas studies are medically contraindicated.'" *Id*. at 577 (quoting 20 C.F.R. § 718.204(c)(4)). In *Cornett*, the ALJ rejected two doctors' opinions because, in the ALJ's view, the doctors' diagnoses were based on "their interpretations of an x-ray and a history of coal dust exposure." *Id*. at 575-76

---

[2]Dr. Baker's examination and conclusion appear only in a form report in cursory answers to questions.

14

(quoting the joint appendix).

This court, in reviewing the record, disagreed with the ALJ's characterizations of the doctors reports and found that the doctors based their opinions on a variety of factors. *Id.* at 576. It noted the doctor's explanation that "[i]n addition to x-rays, they each considered their examination of *Cornett*, his history in the mines, his history as a smoker[,] and pulmonary function studies." *See also Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 711-14 (6th Cir. 2002) (holding that the ALJ's conclusion as to disability was supported by substantial evidence because the doctors' opinions on which the ALJ relied considered a variety of factors including other evidence contrary to their conclusions).

In this case, in contrast, although Dr. Baker performed a medical examination of the claimant, my reading of the record is that he supports his conclusion of a moderate impairment and his finding that the claimant was totally disabled solely on the results of non-qualifying pulmonary function tests. *See* J.A. at 157. He does not discuss his medical examination of the claimant as providing support for his conclusion, and he reached his conclusion, as the ALJ points out, despite an arterial blood gas study that suggested only a mild hypoxemia and a chest x-ray showing simple pneumoconiosis. Thus, this case is different from *Cornett* in that the doctors there based their opinions on clinical data regarding the miner's respiratory condition in addition to a non-qualifying pulmonary function test and explained why the totality of the criteria on which they relied established total disability from the respiratory condition. Dr. Baker relied only on the non-qualifying pulmonary function test. The ALJ's conclusion that Dr. Baker's opinion is insufficient is further bolstered, in my view, by the other data to which he cites. Thus, I do not believe that we can say that the ALJ erred in rejecting Dr. Baker's opinion.

15

I believe that the ALJ and the Board acted correctly in rejecting the opinions of both doctors, and I would hold that those findings are supported by substantial evidence.   Thus, I would affirm the Board's decision.